IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34346-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL BRIAN BROUSSARD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Michael Broussard appeals his convictions for third degree child

molestation, third degree child rape, and furnishing liquor to a minor. His only defense to

the sexual offense convictions was that he reasonably believed, based on the assertion of

the alleged victim, that she was over 16. He argues persuasively on appeal that the trial

court violated his Sixth Amendment right to present a defense when it excluded

testimony of a witness to that alleged declaration.  U.S. CONST. amend VI.

He also argues for the first time on appeal that the jury's verdict finding him guilty

of furnishing liquor to a minor was not expressly unanimous, since the jury was

instructed on a means of committing the crime that was not supported by the evidence.

We agree.

We reverse the convictions and remand for a new trial.

### FACTS AND PROCEDURAL BACKGROUND

In or about early August 2013, two teenaged friends, N.C. and T.D., attended a

party at the home of Alex Boscoe.  At the time, N.C. was 16 years old and T.D. was 15.

Michael Broussard, who would later testify that acting as a DJ[1] at parties was a hobby of

his, had loaned his PA[2] system to Mr. Boscoe and played music for guests during the

party.  Mr. Broussard was 26 years old at the time.  According to Mr. Broussard, he did

not know many of the party guests so he introduced himself to people, including to N.C.

and T.D.  He claimed they talked for a while and, because he believed the party was a

college sendoff party for a recent high school graduate, he asked if they were graduates.

According to him, both girls told him that they had just graduated from high school and

were 18.

---

[1] Disc jockey.
[2] Public address.

Both N.C. and T.D. dispute this. While they admit seeing Mr. Broussard at Mr. Boscoe's party, they deny having spoken to him that evening.

A few days later, T.D. and N.C. accepted an invitation to a gathering at the home of Beatrice Mears, one of N.C.'s coworkers. Mr. Broussard also attended the gathering. It is undisputed that a number of those in attendance at Ms. Mears's home that evening drank alcohol, danced, lay on an outside bed together, and eventually showered together in various stages of undress. Mr. Broussard admits engaging in conduct that T.D. and N.C. claim occurred in the shower: that he kissed them, touched their breasts, and placed his finger in their vaginas. T.D. also claims that after the shower, Mr. Broussard pulled her into a bedroom and attempted to have intercourse with her but she stopped him. Mr. Broussard denies pulling her into the room but admits they were in a bedroom together, he tried to have sex with her, and she asked him to stop. After that, the two girls called a friend to pick them up and left.

T.D. mentioned the possible sexual assault to a counselor in a regularly scheduled counseling session shortly after it occurred. The counselor, a mandatory reporter, notified CPS[3] of what she had been told. Police officers assigned to investigate the incident spoke to Mr. Broussard in June 2014. Mr. Broussard admitted to having sexual contact with T.D. and N.C. and bringing alcohol to the party but claimed to have been

---

[3] Child Protective Services, a division of the Washington State Department of Social and Health Services.

told by T.D. and N.C. that they were 18 years old. He was charged with child molestation of T.D. in the third degree, rape of T.D. in the third degree, assault of N.C. in the fourth degree with sexual motivation, and furnishing liquor to a minor.

The case proceeded to a jury trial. Because T.D. was under Washington's age of consent (16 years of age) at the time of Ms. Mears's house party, the conduct to which Mr. Broussard had already admitted was enough to prove the charges of third degree rape and third degree child molestation involving her. Mr. Broussard's only defense to those charges was the statutory defense that "at the time of the offense [he] reasonably believed [T.D.] to be [a specified age] based upon declarations as to age by the alleged victim." RCW 9A.44.030(2). The "specified age" applicable in the case of T.D. was "at least sixteen." RCW 9A.44.030(3)(c).

The first witness called by Mr. Broussard in the defense case was Amanda Reece. It was undisputed that she was present at Mr. Boscoe's party. She testified that she had seen T.D. and N.C. speaking with Mr. Broussard while Mr. Broussard was acting as a DJ. Before Ms. Reece could respond to whether she witnessed any statements by the girls about their age, the State objected on the basis of hearsay. The court excused jurors for an extended argument about whether Ms. Reece would be allowed to testify to what she heard.

When asked by the court whether any exception to the hearsay rule other than impeachment applied, defense counsel answered that the testimony was essential to Mr.

4

Broussard's statutory defense—a defendant could not prove the defense if he could not

present evidence of what he was told.[4]

Defense counsel was invited to make an offer of proof.  In a representative part of

a longer offer, he elicited the following testimony:

> [DEFENSE COUNSEL]:  . . . I just ask you once again, outside the presence of the jury, what it was that you overheard being stated and by whom stated—or who stated that—that—
> MS. REECE:  They both were saying that they had just graduated high school and that they were eighteen years-old.
> [DEFENSE COUNSEL]:  And when you say that—they were both saying the same words or do you recall who said what?
> MS. REECE:  I don't remember exactly which one said it.
> [DEFENSE COUNSEL]:  Okay.
> MS. REECE:  But they pretty much were saying the exact same words.
> [DEFENSE COUNSEL]:  Okay.  So, did you hear the word eighteen?
> MS. REECE:  Yes.
> [DEFENSE COUNSEL]:  Okay.  And are you sure that that was in regards to an age; it wasn't talking about a date or something of that nature?
> MS. REECE:  Yes.
> [DEFENSE COUNSEL]:  And why did you—I mean, what made you listen to that?

---

[4] He referred to the Washington pattern jury instruction that appears in 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 19.04, at 318 (4th ed. 2016) (WPIC), which deals with the statutory defense.  He stated:

> [T]he best I could tell the Court here is just from a practical analysis of looking over the [WPIC] 19.04 jury instruction and asking for a preponderance of the evidence to be established that an assertion was made by [T.D.] or [N.C.] about their age, how a defendant could be expected to prove that if he is unable to say anything about it.

Report of Proceedings at 226.

MS. REECE:  I don't know.  I just eavesdropped.  I was with friends talking and I overheard them talking.  So—
[DEFENSE COUNSEL]:  Okay.
MS. REECE:  —I was listening.
[DEFENSE COUNSEL]:  Now, did you hear it said once, multiple times?
MS. REECE:  Once.
[DEFENSE COUNSEL]:  Okay.  And are you—were they talking with each other or speaking with Mr. Broussard?
MS. REECE:  They were speaking with Mr. Broussard.

Report of Proceedings (RP) at 227-29.

After the trial court sustained the State's objection, defense counsel asked if the court would be sustaining the State's objection if Mr. Broussard was asked about T.D.'s alleged declaration of her age.  The State indicated it would object to Mr. Broussard testifying about the alleged declaration as well.  After hearing argument, the court explained that while it found Ms. Reece's testimony to be problematically tenuous and selective, it would overrule the objection if it were made when Mr. Broussard testified.

Ms. Reece was cross-examined about her and Mr. Broussard's relationship at the time of the trial, and she admitted she was engaged to Mr. Broussard and they had a several month-old child.  Her testimony was that they had been only friends at the time of Mr. Boscoe's party.

The only other defense witness was Mr. Broussard.  He testified to his alleged conversation with T.D. and N.C. at Mr. Boscoe's party, claiming that both told him they had graduated from high school and were 18.

6

In closing argument, the prosecutor told jurors, "There is no direct or circumstantial evidence presented other than the defense claim that these girls ever told him anything, that they even really talked to him before the night of the incident." RP at 346. In rebuttal, the prosecutor argued, "[T]he defendant's story is take my word for it. They—they told me they were older, despite every piece of evidence indicating otherwise and common sense based on those facts clearly indicating otherwise." RP at 363.

The jury found Mr. Broussard guilty of third degree molestation, third degree rape of a child, and furnishing liquor to a minor. Jurors could not agree on the fourth degree assault charge relating to N.C., so a mistrial was declared as to that charge.

Mr. Broussard appeals.

## ANALYSIS

We first address Mr. Broussard's challenge to his convictions for third degree rape and third degree molestation, and issues that might arise on retrial of the sexual offense charges. We then address his challenge to his conviction for furnishing liquor to a minor.

SEXUAL OFFENSE CHARGES AND CONVICTIONS

*Right to present the statutory defense provided by RCW 9A.44.030(2)*

Mr. Broussard first argues that the trial court violated his right to present a defense when it excluded Ms. Reece's testimony corroborating his claim that T.D. told him she was 18. A defendant is entitled to have the jury instructed on the statutory defense provided by RCW 9A.44.030(2) when there is evidence that the victim made an explicit

assertion about his or her age to the defendant. *State v. Bennett*, 36 Wn. App. 176, 181, 672 P.2d 772 (1983). The defendant is not entitled to have the defense submitted to the jury simply because the victim's behavior, appearance, and general demeanor suggested that the victim was older than he or she actually was. *Id.* at 181-82.

In addition to making a Sixth Amendment argument on appeal, Mr. Broussard's lawyers argue that Ms. Reece's testimony would not have been hearsay, and we agree that it was most likely being offered for a nonhearsay purpose. It does not appear that Mr. Broussard offered T.D.'s reported statement to prove that at the time of Mr. Boscoe's party she had graduated high school and was 18. It appears the statement was offered to prove only that she told Mr. Broussard she was 18. This is not a hearsay purpose. But Mr. Broussard's trial lawyer did not argue that the statement was nonhearsay below, so we will not entertain that argument as an independent basis for decision on appeal. *See* RAP 2.5(a). That it appears to have been offered for a nonhearsay purpose does become relevant to the Sixth Amendment challenge, however.

Turning to that challenge,[5] state rule makers have broad latitude to establish rules excluding evidence from criminal trials. A criminal defendant's right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in

---

[5] We find that the Sixth Amendment challenge was sufficiently raised in the trial court. It is also constitutional error, and the State makes no argument that it is not manifest error subject to RAP 2.5(a)(3).

the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)).  But the latitude to make and apply rules excluding a criminal defendant's evidence "has limits.  'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."'" *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984))).

Evidence rules impermissibly abridge a criminal defendant's right to present a defense if they are "'arbitrary' or 'disproportionate' and 'infringe[ ] upon a weighty interest of the accused.'" *State v. Rafay*, 168 Wn. App. 734, 796, 285 P.3d 83 (2012) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)), *review denied*, 176 Wn.2d 1023, *cert. denied*, 134 S. Ct. 170 (2013).  In the exceptional case where an evidence rule abridges a defendant's right to present a defense, we must disregard the rule in order to protect the paramount constitutional right.

The Sixth Amendment concern is with evidence that is relevant but excluded by rules that serve no legitimate purpose or whose restriction is disproportionate to the ends

the rules are asserted to promote. *Scheffer*, 523 U.S. at 308; *State v. Hudlow*, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). Article I, § 22 of the Washington Constitution guarantees criminal defendants a right to present testimony in their defense that is equivalent to the right guaranteed by the United States Constitution. *See Huddlow*, 99 Wn.2d at 14-15. A claimed violation of the Sixth Amendment right to present a defense is reviewed de novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

The constitutional right to present a defense applied to the testimony Ms. Reece could provide. Evidence that T.D. told Mr. Broussard several days before Ms. Mears's house party that she was 18 is unquestionably relevant to his only defense to the most serious charges against him. The next consideration is whether, in Mr. Broussard's case, the hearsay rule served a legitimate purpose or whether its restriction on relevant evidence was disproportionate to the purpose it was designed to serve. As already observed, the hearsay rule did not even apply to the purpose for which Mr. Broussard appears to have offered the evidence. There was no legitimate countervailing interest that justified excluding the defense evidence.

The State suggests that even if there was constitutional error, it was harmless beyond a reasonable doubt. An exclusion of evidence that a defendant claims deprived him of the right to present a defense is harmless if the untainted, admitted evidence is so overwhelming that it necessarily leads to a finding of guilt. *State v. Smith*, 148 Wn.2d

122, 139, 59 P.3d 74 (2002).  Because only a few witnesses claimed to know whether Mr. Broussard spoke with T.D. at Mr. Boscoe's party or what was said, the State cannot demonstrate that Ms. Reece's corroboration of Mr. Broussard's version of events could not have made a difference.  Ms. Reece was certainly subject to cross-examination for bias, but jurors might still have believed her.  Her corroboration would have taken away the State's argument to jurors that Mr. Broussard had no evidence to offer about the declaration other than "take my word for it."  Because the error is not shown to be harmless, reversal is required.

*Other assignments of error*

Mr. Broussard makes four other assignments of error that relate to evidence offered or rulings made in connection with the sexual offense charges.  We need not address the claim of ineffective assistance of counsel for failure to object to evidence of an alleged STD[6] transmission or to the trial court's "same criminal conduct" determination at sentencing.  Any objection warranted on those matters can be raised and resolved in any retrial.

Mr. Broussard argues that the trial court erred in overruling a defense objection when N.C.'s mother testified to having searched N.C.'s room in August 2013 after seeing what she believed were cigarette burns on N.C.'s arms.  She testified to having found

---

[6] Sexually transmitted disease.

cigarettes, box cutters, and scissors. Any error was harmless in light of the mistrial, but in this instance, we choose to provide guidance for any retrial. N.C.'s mother testified that what she found "led me to believe [N.C.] had been harming herself." RP at 182. N.C. had testified just before her mother did, and answered "yes" when asked by the prosecutor whether she had "some difficulty with what had happened." RP at 161-62. But N.C. was never asked to explain the difficulty and she never suggested she had engaged in self-harm, let alone as a result of Mr. Broussard's actions. RP at 161. While the State argued that its questioning of N.C.'s mother was eliciting only "observations," RP at 185, not opinion or hearsay, the observations were not relevant without a connection to the offense conduct. Any offer of this evidence from N.C.'s mother in a retrial warrants the trial court's careful consideration of ER 701, 402, and 403.

Mr. Broussard also argues that the trial court should have given a *Petrich*[7] instruction in connection with the rape and molestation charges involving T.D., since there were two acts of sexual contact that took place at different times, in different locations. Yet in the trial below, Mr. Broussard testified and admitted that both acts occurred; it was not a disputed issue. In a retrial, it would be prudent for the State to propose a *Petrich* instruction or make an election.

---

[7] *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988).

12

FURNISHING LIQUOR TO A MINOR

Mr. Broussard also challenges his conviction for furnishing liquor to a minor, arguing he was deprived of his right to an expressly unanimous verdict because the jury was instructed on two alternative means of committing the crime, one of which was not supported by substantial evidence. This would be error if furnishing liquor to a minor is what Washington courts term an "alternative means crime."

Statutes establishing what we call "alternative means crimes" "describe *distinct acts* that amount to the same crime." *State v. Peterson*, 168 Wn.2d 763, 770, 230 P.3d 588 (2010). Alternative means crimes implicate a criminal defendant's right to an *expressly* unanimous verdict. *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); CONST. art. I, § 21. "The more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute describes minor nuances inhering in the same act, the more likely the various 'alternatives' are merely facets of the same criminal conduct." *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015). "The mere use of a disjunctive in a statute does not an alternative means crime make." *Peterson*, 168 Wn.2d at 770. "Nor has it been found that structuring the statute into subsections is dispositive or that definitional statutes create alternative means." *Sandholm*, 184 Wn.2d at 734 (citing *State v. Lindsey*, 177 Wn. App. 233, 241, 311 P.3d 61 (2013)).

Under RCW 66.44.270(1), "[i]t is unlawful for any person to sell, give, or otherwise supply liquor to any person under the age of twenty-one years or permit any person under that age to consume liquor on his or her premises or on any premises under his or her control." The "or" is not significant, but the distinct nature of the acts separated by the word "or," is. Actively furnishing liquor to a minor is qualitatively different conduct from enabling underage drinking by providing premises where it can occur. These are not nuances of the same act. We conclude that furnishing liquor to a minor is an alternative means crime.

The threshold test governing whether unanimity is required on the means of committing a crime is whether sufficient evidence exists to support each of the alternative means presented to the jury.

> If the evidence is *sufficient* to support each of the alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the crime is unnecessary to affirm a conviction because we infer that the jury rested its decision on a unanimous finding as to the means. On the other hand, if the evidence is *insufficient* to present a jury question as to whether the defendant committed the crime by any one of the means submitted to the jury, the conviction will not be affirmed.

*Ortega-Martinez*, 124 Wn.2d at 707-08 (citations omitted).

Consistent with RCW 66.44.270, jurors were told in instruction 13 that to convict Mr. Broussard of furnishing liquor to a minor, an element that must be proved beyond a reasonable doubt was that he

14

    a)    sold, gave, or otherwise supplied liquor to any person under twenty-one years of age; or

    b)    did permit any person under the age of twenty-one to consume liquor on his or her premises or any premises under his or her control.

Clerk's Papers at 54. There was no evidence that Ms. Mears's home was Mr. Broussard's premises or premises under his control.

The State argues we should reject Mr. Broussard's challenge because he failed to object to language appearing later in instruction 13 that told the jury:

> To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (2)(a) or (2)(b) has been proved beyond a reasonable doubt, as long as each juror finds that either (2)(a) or (2)(b) has been proved beyond a reasonable doubt.

*Id.* This misstatement of the law, even though not objected to by Mr. Broussard, does not change the fact that he was deprived of his constitutional right to an expressly unanimous verdict.

The State came close to avoiding this problem when it argued during closing that the case "primarily . . . involves (a), he gave or otherwise supplied liquor to person[ ]s under twenty-one." RP at 338. Even an alternative means crime will not be analyzed as such if a single means is elected at trial. *Peterson*, 168 Wn.2d at 771 n.6 (citing *State v. Smith*, 159 Wn.2d 778, 783, 790, 154 P.3d 873 (2007)). But the prosecutor went on to tell jurors that the other statutory means could apply as well. Any retrial of the charge should be based only on means that are supported by evidence.

15

No. 34346-4-III
*State v. Broussard*

We reverse the convictions and remand for proceedings consistent with this opinion. Since Mr. Broussard prevails, we need not address his request for a waiver of fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

16