IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54297-8-II |
| Respondent, | |
| v. | |
| GERALD LAWRENCE COLE, JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. – Gerald Cole crashed his car into a fence and became involved in a physical altercation with multiple police officers who responded to the accident. During the struggle, two officers saw Cole's hand on a firearm. Cole was charged with first degree unlawful possession of a firearm and second degree driving while license suspended.[1] For the unlawful possession of a firearm charge, the jury instructions included definitions of both actual and constructive possession. During Cole's closing argument, in response to an objection by the State, the court instructed the jury that the lawyers' statements are arguments and that it was the jury's responsibility to determine what had been proven during the trial. The court further instructed the jury that they could only consider facts that had been admitted into evidence.

The jury found Cole guilty of first degree unlawful possession of a firearm and second degree driving while license suspended. After the court dismissed the jury, the court, along with

---

[1] Cole was charged with several additional charges on which he was acquitted.

the attorneys and Mr. Cole, discussed further scheduling and conditions of release. During this discussion Cole interrupted the proceeding and made what he contends was a request to poll the jury. The court did not address Cole's request.

Cole filed a motion to arrest the judgment on the unlawful possession of a firearm conviction, claiming the evidence was insufficient to sustain the conviction. The trial court granted the motion, arrested the judgment, and dismissed that conviction. The court also sentenced Cole on the remaining conviction. The State appealed the dismissal of the unlawful possession of a firearm conviction, and we vacated the trial court's order and remanded for resentencing.

At resentencing, the trial court ordered that Cole's sentence for unlawful possession of a firearm run consecutively with sentences that were imposed that same day in separate cases. The trial court also ordered Cole to register as a felony firearm offender and imposed legal financial obligations (LFOs).

On appeal, Cole raises multiple issues regarding his trial and sentence. Regarding the trial, Cole argues that unlawful possession of a firearm is an alternative means crime when both definitions of possession are provided to the jury. Because no unanimity instruction was given as to this issue, Cole thus contends that the evidence must be sufficient to support both alternatives which, he contends, it is not. Cole further argues that the court improperly commented on the evidence by instructing the jury on the definition of constructive possession, and by instructing the jury to consider only the facts admitted into evidence. Finally, Cole argues that the court improperly ignored his request to poll the jury.

Regarding sentencing, Cole argues that the court relied on an offender score that included his previous convictions for unlawful possession of a controlled substance, and the court failed to

provide sufficient findings to support a consecutive sentence. Furthermore, Cole contends that the requirement that he register as a felony firearm offender must be stricken because the authorizing statute, RCW 9.41.330,[2] is unconstitutionally vague. Finally, Cole challenges the criminal filing fee, the DNA database fee, non-restitution interest accrual provision, and the collection fee that the court imposed. The State concedes the trial court erred when it did not enter findings to support the consecutive sentence and when it imposed the challenged LFOs.

For the reasons set forth below, we reject each of Cole's claims related to his trial.

Regarding sentencing, we accept the State's concession that the trial court erred when it did not submit any written findings to support the consecutive sentence, and we accept the State's concession as to three of the four LFOs that Cole challenges. Further, we agree with Cole that his prior convictions for possession of a controlled substance are unconstitutional and must be stricken from his offender score. We reject Cole's remaining challenge to his sentence.

Accordingly, we affirm in part, reverse in part and remand for resentencing.

FACTS

I. UNDERLYING EVENT

Cole was at a bar with an acquaintance, and the two shared some marijuana that the acquaintance had provided. After leaving the bar Cole drove his car into a chain link fence outside a residence, knocking the fence over. The car came to a stop on top of the fence. The homeowner saw Cole trying to extricate the vehicle from the fence and called 911.

---

[2] RCW 9.41.330 has been amended. LAWS OF 2016, Ch. 94, § 1. But this amendment has no material impact on this case; accordingly, we cite to the current version.

Three officers responded to the call. When the officers arrived, Cole exited the car and started running from the officers. The officers yelled at Cole to stop but he did not comply. The officers quickly caught up to Cole and a struggle ensued. Two additional officers arrived to assist. During the struggle, Officer Jimmy Welsh saw that Cole had his hand on his (Welsh's) firearm and was attempting to remove it from the holster, but Officer Welsh was then able to get temporary control of Cole's arm. Officer Welsh and Officer Ryan Bradley also saw Cole gripping a different firearm. The officers removed the firearm from Cole's grip and eventually took Cole into custody. The officers recovered the second firearm Cole had been gripping. Cole was taken to the hospital where he tested positive for phencyclidine, also known as PCP.

## II. TRIAL

The State charged Cole with second degree assault, two counts of third degree assault, first degree unlawful possession of a firearm, possession of a stolen firearm, attempting to disarm a law enforcement officer, and second degree driving while in suspended or revoked status.

A. TESTIMONY

At trial, Cole chose to represent himself, with the assistance of a stand-by attorney. The State called as witnesses the officers involved in the encounter, the homeowner, and the doctor who treated Cole; their testimony was consistent with the events described above. In his defense, Cole called his acquaintance who provided the marijuana at the bar. The acquaintance testified that the "blunt" contained embalming fluid and weed. 4 Verbatim Report of Proceedings (VRP) at 611. Cole testified he was unaware, prior to smoking the blunt, that it contained anything more than marijuana. Cole also testified that he did not possess a firearm at the time of the altercation and that he had no memory of what occurred after he started to drive away from the bar.

4

No. 54297-8-II

B. Jury Instructions and Closing Argument

As part of the State's proposed jury instructions, the State included an instruction defining both actual and constructive possession, found in Washington Practice Instructions 133.52. 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 133.52 (5th Ed) (WPIC). Cole did not object to the instruction, and the court included both definitions.

Regarding the unlawful possession of a firearm charge, the State argued at closing that the evidence supported both actual and constructive possession. The State noted that the officers saw the defendant "whipping that gun out" and another officer saw and felt a gun pointed at him. 5 VRP at 770. The State also noted that Cole was driving his own car prior to the struggle. The State argued that there was no other explanation for the gun being present during the struggle other than Cole's possession of the firearm up until the struggle.

On rebuttal, the State elaborated on possession, stating it was "very possible the car - - that the gun remained in the car and that the defendant when he finally elected to abandon the car for the last time - -." *Id.* at 820. Cole then objected, and the court sustained the objection because, "Those facts aren't in evidence." *Id.* The State continued with closing, explaining that Cole had the gun when he got out of the car for the last time and there was no one else around, and there was no evidence to suggest that the gun came from anywhere else.

During Cole's closing argument, Cole argued, "There's no evidence here besides one gun that doesn't have fingerprints. It doesn't have fingerprints or the results were inconclusive." *Id.* at 798. Cole went on to argue that the State did not have "fingerprints because [the State] chose not to do them. I asked, but [it] chose not to do them." *Id.* The State then objected, and stated, "The weapon was available to both parties." *Id.* The court responded, "the lawyers and Mr. Cole, as he's

5

acting as an advocate at this point, it's argument [sic], so you have to decide what has been proven and can only consider the facts that are introduced in evidence." *Id.*[3]

C. JURY VERDICT

The jury convicted Cole on only the first degree unlawful possession of a firearm charge and the second degree driving with a suspended license charge.[4] After the court read the verdicts, the court excused the jury. The jury left the courtroom, and the court stated "[a]t this time, I'm going to enter the guilty verdict[s]." 8 VRP at 862.

The court, the parties, and Cole proceeded to discuss scheduling matters, and Cole's stand-by attorney and Cole addressed the court on multiple occasions. There were also multiple pauses in the proceedings.

As the court was concluding the proceeding, the court stated that "once we get these orders signed, I'm going to remand you back into the custody of the sheriff's. I'm going to ask [the prosecutor] and [the stand-by attorney] to hang around to hear if they have anything to say." *Id.* at 869. Cole then interjected, "All right. Can you make sure? Can you poll - - are you going to poll them?" *Id.* The court replied, "I'm sorry." *Id.* There was then a pause in the proceedings. After the pause, the court explained that Cole would be held pending sentencing and the proceedings concluded. The minutes of the proceeding do not reflect that Cole formally requested that the jury be polled.

---

[3] During deliberations, the jury asked the court to clarify the instruction on an assault charge and whether constructive possession could be used for determining assault. The court directed the jury to review the instructions.

[4] Cole's second degree driving with a suspended license conviction is not at issue.

No. 54297-8-II

### III. First Appeal

Following his conviction, Cole moved to vacate his unlawful possession of a firearm conviction asserting, inter alia, insufficient evidence. The trial court granted the motion and sentenced Cole on only the driving while license suspended conviction. The State appealed, and we vacated the court's order dismissing the firearm conviction and remanded for reinstatement of the conviction. *State v. Cole*, No. 50433-2-II, slip op. at 8 (Wash. Ct. App. May 30, 2019) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2050433-2-II%20Unpublished%20Opinion.pdf.

### IV. Resentencing on Remand

At resentencing the trial court ordered Cole's sentence for unlawful possession of a firearm to be served consecutively with sentences imposed in other cases that same day. To support the consecutive sentence, the trial court merely noted in Cole's judgment and sentence, "Aggravating factors were . . . found by the court . . . consistent w[ith the] statute." Clerk's Papers (CP) (Mar. 3, 2020) at 46. The judgment and sentence also included preprinted language that stated, "Findings of fact and conclusions of law are attached in Appendix 2.4." *Id.* Appendix 2.4 was not included in the record.

The court ordered Cole to register as a felony firearm offender after considering Cole's criminal history. The court also imposed a $200 criminal filing fee, a $100 DNA database fee, and a collection fee. Finally, the court required that all financial obligations bear interest, and did not limit this provision to non-restitution interest.

Cole appeals.

7

DISCUSSION

I. ALTERNATIVE MEANS CRIME

Cole argues that unlawful possession of a firearm is an alternative means crime when the definitions of constructive and actual possession are both provided. Because no unanimity instruction was given as to this question, he contends that the evidence must be sufficient to support both alternatives, and further contends that it was not sufficient.

We disagree.

A. LEGAL PRINCIPLES

*1. Alternative Means Crime*

An alternative means crime is an offense that the State may prove in a variety of ways. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019). Generally, when a statute sets forth distinct acts that constitute the same crime, that offense is interpreted as an alternative means offense. *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015). When a criminal offense is an alternative means offense, either jury unanimity is required or both alternatives need to be supported by sufficient evidence.[5] *Barboza-Cortes*, 194 Wn.2d at 643. "Deciding which statutes create alternative means crimes is left to judicial interpretation." *Id.*

---

[5] It is undisputed that a unanimity instruction was not provided in this case.

*2. Unlawful Possession of a Firearm*

Under RCW 9.41.040[6] a person is guilty of unlawful possession of a firearm if the person owns, has in their possession, or controls a firearm and is prohibited by law of such ownership, possession, or control. "Actual possession occurs when the item is in the actual physical custody of the person charged with possession." 11A WPIC: CRIMINAL 133.52 (5th Ed). "Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item." *Id.*

B. ANALYSIS

Cole contends that unlawful possession of a firearm is an alternative means crime when the State relies on theories of both actual and constructive possession. The State responds that this issue is controlled by our supreme court's decision in *Barboza-Cortes*.

In *Barboza-Cortes*, the issue on appeal was whether unlawful possession of a firearm is an alternative means crime when the State alleges both *ownership* of a firearm and possession and control of a firearm. *See* RCW 9.41.040; *Barboza-Cortes*, 194 Wn.2d at 646. The supreme court held that "[w]hile there may be subtle distinctions in aspects of ownership, possession, and control that may be material in other contexts, in the present circumstance they all describe ways of accessing guns; and all of those interactions have been barred by the legislature as regards felons." *Barboza-Cortes*, 194 Wn.2d at 646. The court explained that the alternatives provided in RCW 9.41.040 are more properly described as " 'nuances inhering in the same [prohibited] act'—

---

[6] RCW 9.41.040 has been amended several times. LAWS OF 2020, ch. 29 § 4, LAWS OF 2019, ch. 46, §5003, ch. 245, § 3, Ch. 248, § 2; LAWS OF 2018, ch. 234, § 1, LAWS OF 2017, ch. 233, § 4; LAWS OF 2016, ch. 136, § 7. These legislative amendments have no material impact on this case; accordingly, we cite to the current version.

accessing guns." *Id.* (alteration in original) (quoting *Sandholm,* 184 Wn.2d at 734). Thus, the court rejected Barboza-Cortes' contention that unlawful possession of a firearm is an alternative means crime in that particular context and Barboza-Cortes' right to a unanimous jury verdict was not violated. *Id.*

In response to the State's argument, Cole correctly concedes that his claim is distinct from the issue raised in *Barboza-Cortes*. However, Cole asserts that actual and constructive possession are mutually exclusive, antagonistic acts. Thus, he contends, they encompass distinct acts that satisfy the definition of alternative means. Cole is mistaken.

First, Cole is incorrect in describing alternative and constructive possession as mutually exclusive in every context. When the State proves actual possession, it necessarily also proves dominion and control over the item. The State need only rely on a theory of constructive possession when it cannot demonstrate actual possession. Thus, we disagree with Cole that actual possession is distinct from dominion and control over an item.

Second, the reasoning of *Barboza-Cortes* applies to this context. The prohibited act under RCW 9.41.040 is the defendant accessing a firearm when they are prohibited by law from doing so. *Id.* Actual possession and constructive possession are two different ways to describe the prohibited act; thus, they are two alternatives that are as " 'nuances inhering in the same [prohibited] act' " and do not create an alternative means crime. *Id.* (quoting *Sandholm,* 184 Wn.2d at 734).[7]

---

[7] Although *Barboza-Cortes* concerns *second degree* unlawful possession of a firearm and here Cole was convicted of *first degree* unlawful possession of a firearm, the relevant language for both degrees, "the person owns, has in his or her possession, or has in his or her control any firearm" is the same; therefore, *Barboza-Cortes's* analysis is applicable here. RCW 9.91.040.

Accordingly, because unlawful possession of a firearm is not an alternative means crime in this context, the State was not required to provide sufficient evidence under both definitions of possession.

## II. COMMENTS ON THE EVIDENCE

Cole argues that the trial court commented on the evidence twice during his trial. First, Cole contends that there was no evidence of constructive possession; therefore, the court commented on the evidence by providing the jury with the definition of constructive possession. Additionally, Cole argues that the court separately commented on the evidence during Cole's closing argument when it instructed the jury to only consider the facts admitted into evidence.

We decline to consider these arguments because Cole failed to preserve them for appeal.

### A. LEGAL PRINCIPLES

#### 1. Judicial Comments on the Evidence

A trial court is prohibited from " 'conveying to the jury his or her personal attitudes toward the merits of the case' " or instructing the jury that " 'matters of fact have been established as a matter of law.' " *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)); WASH. CONST. art. IV, § 16. A comment on the evidence is not confined to comments expressly conveyed; rather, it is sufficient if the court's feelings are merely implied. *Levy*, 156 Wn.2d at 721. "[I]t must appear that the trial court's attitude toward the merits of the cause is reasonably inferable from the nature or manner of the court's statements." *State v. Miller*, 179 Wn. App. 91, 107, 316 P.3d 1143 (2014). "Where a jury instruction 'does no more than accurately state the law pertaining to an issue,' that instruction 'does not constitute an impermissible comment on the evidence by the trial judge.' " *State v. Gouley*, 19 Wn. App. 2d

185, 197, 494 P.3d 458 (2021) (quoting *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015)), *review denied*, 198 Wn.2d 1041 (2022). When determining if a court's words or actions are a comment on the evidence, we must consider the facts and circumstances of the case. *State v. Jacobsen*, 78 Wn.2d 491, 495, 477 P.2d 1 (1970).

### 2. RAP 2.5(a)

We generally refuse to review an assignment of error when that error was not raised before the trial court. RAP 2.5(a). However, we will review an assignment of error if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). "To determine whether the error was manifest, there must be a showing of 'actual prejudice,' which requires a 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *Gouley*, 19 Wn. App. 2d at 197-98 (alteration in original) (internal quotations removed) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). Although comments on the evidence are errors of constitutional magnitude, the appellant must still show that the error was manifest by showing that the error had a practical and identifiable consequence in the trial. RAP 2.5; *Gouley*, 19 Wn. App. 2d at 197-98.

### B. CONSTRUCTIVE POSSESSION

Cole argues that the trial court, by instructing the jury on constructive possession, communicated to the jury that it believed there was evidence to support a finding of constructive possession. Cole acknowledges he did not object to this instruction during his trial, but he contends it was a manifest error because the trial court knew the State was arguing constructive possession

and that there was no evidence for that theory; therefore, the court could have avoided the error by not giving the instruction.[8]

Even assuming there was a comment on the evidence, Cole fails to demonstrate manifest error. To support his position, Cole points to the fact that the court sustained Cole's objection to the State's argument in closing that the gun somehow remained in Cole's car after he exited the car. But the State was arguing a specific hypothetical that had no support; the testimony at trial in fact supported that Cole brought the gun with him, and did not leave it in the car because the officers saw Cole handle the gun during the struggle. The court rejecting one specific hypothetical does not suggest that it thought there was no evidence at any point that constructive possession was possible. Nor does the court's rejection indicate that it believed it was not possible that the gun was in the car *prior* to Cole exiting the car.

Cole also points to the fact that the trial court arrested judgment for insufficient evidence. Notwithstanding that we reversed the trial court on that point, the trial court arrested the judgment because it believed that there was insufficient evidence of the "knowing" element, not because of insufficient evidence of possession. 9 VRP at 878.[9]

---

[8] Cole argues that a claim that the trial court commented on the evidence is always reviewable on appeal irrespective of whether the issue was raised below. However, a comment on the evidence challenge is not automatically preserved. *Gouley*, 19 Wn. App. 2d at 198. Cole also argues that he preserved the issue by filing his post-trial motions. But Cole did not object to the jury instructions or the court's comment during closing in those motions. *State v. Loos*, 14 Wn. App. 2d 748, 757, 473 P.3d 1229 (2020) (noting that raising an objection on a different legal grounds does not preserve an objection made for the first time on appeal).

[9] We are also unpersuaded by Cole's argument that the jury's question about the application of constructive possession to the assault charge demonstrates manifest error. Cole fails to explain how the jury's confusion on a separate charge that he was acquitted of, which contained entirely different elements, is relevant to his conviction for unlawful possession of a firearm.

Accordingly, we decline to review this claim of error.

C. CLOSING ARGUMENT

Cole also argues that the court commented on the evidence when, during Cole's closing argument, it stated that " 'the lawyers and Mr. Cole, as he's acting as an advocate at this point, it's argument, so you have to decide what has been proven and can only consider the facts that are introduced in evidence.' " Br. of Appellant at 39 (emphasis omitted) (quoting 5 VRP at 798). Cole contends that the court improperly limited the jury to only considering the facts introduced into evidence, undermining the court's written instructions that stated reasonable doubt may arise from a lack of evidence, and expressed to the jury that it did not believe Cole's argument regarding a lack of evidence.

Again, in order for us to review this claim for the first time on appeal Cole must show that the trial court's remark, even assuming it was erroneous, constituted manifest error. Cole, however, fails to provide us with any argument that this remark constituted manifest error; accordingly, Cole fails to show that he preserved this error for appeal and we decline to consider it. RAP 2.5; *Gouley*, 19 Wn. App. 2d at 197-98; *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (noting that "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration).

Even if we were to consider this argument, we are unpersuaded that the court commented on the evidence. The court never stated, or implied, that the jury could not consider Cole's argument or that it could not draw a conclusion of reasonable doubt based on the State's failure to provide evidence on an issue to be decided by the jury. Rather, the court's remark was in response to the State's appropriate objection to Cole's attempt to have the jury consider unadmitted

evidence. Cole appears to equate the ability to argue that the jury can find reasonable doubt from a *lack* of evidence with the ability of a party to reference, in closing argument, evidence that was not admitted during the trial. The court's remark was an accurate statement of law, and Cole fails to show that this standard instructional language created a manifest error in this case.

Accordingly, we decline to consider Cole's claims that the trial court commented on the evidence.

### III. REQUEST FOR A JURY POLL

Cole argues that the trial court erred when it denied or ignored his request to poll the jury.

We decline to consider this argument because Cole failed to preserve this claim for appeal.

Here, the following exchange occurred, "once we get these orders signed, I'm going to remand you back into the custody of the sheriff's. I'm going to ask [the prosecutor] and [the stand-by attorney] to hang around to hear if they have anything to say." 8 VRP at 869. Cole then responded, "All right. Can you make sure? Can you poll - - are you going to poll them?" *Id.* The court replied, "I'm sorry." *Id.* There was then a pause in the proceedings. After the pause, the court explained that Cole would be held pending sentencing and the proceedings concluded.

To the extent it could even be said that Cole asked the court to poll the jury, the request was, at best, equivocal. Cole failed to make it clear for the court that he actually wanted a formal polling of the jury, and lodged no objection when the court ended the hearing without polling the jury. Moreover, the context of the entire record suggests that the trial court did not hear Cole when made the polling remark. Throughout the trial, the court had difficulty hearing, and on at least one occasion stated "sorry" to indicate it did not hear something. 2 VRP at 182. Additionally, the phrasing of Cole's question was unclear, particularly because the question came well after the

court had moved onto other matters. The court's comment "I'm sorry" is not sufficient for us to conclude that the court denied a request by Cole to poll the jury; instead, it suggests that the court did not hear what Cole had said.

Additionally, because we cannot say that the trial court either heard Cole's remark or understood it to be a request to have the jury formally polled, the record lacks the facts necessary to adjudicate the claim. If the facts necessary to adjudicate the claimed error are not in the record on appeal, then there is no actual prejudice shown and the error is not manifest. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

Accordingly, because Cole fails to show there was a manifest error, we decline to consider it.[10]

## IV. BLAKE

Cole argues that his previous two convictions for possession of a controlled substance and conviction for attempted possession of a controlled substance are unconstitutional; thus, he must be resentenced. The State concedes that the convictions should be stricken from Cole's judgment and sentence and that Cole should be resentenced. We accept the State's concession.

*State v. Blake*, 197 Wn.2d 170, 195, 481 P.3d 521 (2021) held that former RCW 69.50.4013(1) (2017), Washington's strict liability drug possession statute, is void because it violates state and federal due process clauses. When a conviction is based on an unconstitutional statute, that conviction cannot be considered in calculating the offender score. *See State v.*

---

[10] Cole also argues that cumulative error denied him a fair trial. Here, Cole fails to prove there were any errors during this trial; accordingly, his cumulative error challenge fails. *See State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010).

*Ammons*, 105 Wn.2d 175, 187-88, 713 P.2d 719, 718 P.2d 796 (1986). Accordingly, we remand for Cole's offender score to be amended and for Cole to be resentenced.

## V. EXCEPTIONAL SENTENCE

Cole argues that he also must be resentenced because the court failed to make a finding that there was a substantial and compelling reason for imposing a consecutive sentence. The State concedes the trial court erred. We accept the State's concession.

"Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589 (1).[11] To impose an exceptional sentence, the court must find "there are substantial and compelling reasons justifying an exceptional sentence" and the court must "set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535.[12]

Here, the trial court failed to provide the necessary findings to support the imposition of a consecutive sentence. The court did not provide any written findings, let alone findings that delineated the substantial and compelling reasons that set forth its reasons for its decision to impose consecutive sentences. RCW 9.94A.535. Instead the court merely stated, "Aggravating factors were . . . found by the court . . . consistent w[ith the] statute." CP (Mar. 3, 2020) at 46. The judgment and sentence also included preprinted language that provided, "Findings of fact and conclusions of law are attached in Appendix 2.4." However, the record does not reflect that an

---

[11] RCW 9.94A.589 has been amended, but this amendment has no material impact on this case. Accordingly, we cite to the current version. LAWS OF 2020, ch. 276, § 1.

[12] RCW 9.94A.535 has been amended, but this amendment has no material impact on this case. Accordingly, we cite to the current version. LAWS OF 2019, ch. 219, § 1; LAWS OF 2016, ch. 6, § 2.

appendix 2.4 was ever attached to the judgment and sentence. Accordingly, the trial court's current language in the judgment and sentence are insufficient to support the imposition of a consecutive sentence. However, on remand for resentencing, the court may make the necessary findings to support a consecutive sentence. *State v. Friedlund*, 182 Wn.2d 388, 395, 341 P.3d 280 (2015) (noting that the proper remedy for an absence of written findings is remand for the entry of those findings).

## VI. FIREARM REGISTRATION STATUTE

Cole contends that RCW 9.41.330, the felony firearm offender registration statute, is unconstitutionally vague because it lacks guidance for determining whether a person's criminal history should require registration as a felony firearm offender. We disagree.

Our supreme court held in *State v. Baldwin*, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003), that the due process void-for-vagueness doctrine is not applicable to sentencing guidelines because they neither "define conduct nor . . . allow for arbitrary arrest and criminal prosecution by the State." *See also Beckles v. United States*, 137 S. Ct. 886, 895, 197 L. Ed. 2d 145 (2017) (sentencing guidelines are not subject to a vagueness challenge); *State v. Brush*, 5 Wn. App. 2d 40, 63, 425 P.3d 545 (2018); *State v. DeVore*, 2 Wn. App. 2d 651, 664, 413 P.3d 58 (2018) (aggravating factors in RCW 9.94A.535(3) are not subject to a vagueness challenge because they do not specify the sentence that must be imposed nor limit the trial court's discretion during sentencing). Similarly, because RCW 9.41.330 does not specify the sentence that must be imposed, and it neither proscribes nor prescribes criminal conduct, the void-for-vagueness doctrine does not apply to RCW 9.41.330.

Cole's argument fails.

## VII. LEGAL FINANCIAL OBLIGATIONS

Cole argues the court erred when it imposed the criminal filing fee, the DNA database fee, and the collection fee. He also challenges the trial court's failure to limit the interest accrual provision so that it applies to only restitution interest. Cole posits that the imposition of these fees were a scrivener error because at the sentencing hearing the court stated that it would waive non-mandatory financial obligations. The State concedes that Cole's DNA has already been collected and that this provision should be stricken from his judgment and sentence. The State further concedes that Cole should prevail on his challenge to the remaining three LFOs.

We accept the State's concession regarding the criminal filing fee, the DNA database fee, and the interest accrual provision. *See State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018) (noting that the legislature eliminated the $200 filing fee on indigent offenders, established the DNA database fee is not mandatory if the defendant's DNA has previously been collected, and prohibited interest accrual on nonrestitution LFOs).

With respect the collection fee, the State incorrectly concedes that the collection fee is a cost under RCW 10.01.160(2).[13] It is not. *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021); *State v. Spaulding*, 15 Wn. App. 2d 526, 536-37, 476 P.3d 205 (2020).

However, we take the State's concession to mean that it no longer seeks collection of this fee, and we will accept the joint request of the parties that this fee be stricken.

---

[13] RCW 10.01.160(2) has been amended, but this amendment has no material impact on this case; accordingly, we cite the current version. LAWS OF 2018, ch. 269, § 6.

CONCLUSION

We reject Cole's assignments of error related to his convictions. We accept the State's concessions regarding Cole's sentence, and reject Cole's constitutional challenge to the firearm registration statute.

Accordingly, we affirm in part and reverse in part, and remand this case to the trial court to strike Cole's unconstitutional convictions from his offender score, to address the lack of findings as to Cole's exceptional sentence, and to waive the criminal filing fee, the DNA database fee, and the collection fee. The trial court is further ordered, on remand, to limit the interest accrual provision to nonrestitution LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

VELJACIC, J.

PRICE, J.